UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KENNETH TRACY,
           Plaintiff,

         v.                                                                         C.A. No. 14-00123-ML

BUENA VISTA THEATRICAL GROUP
d/b/a DISNEY THEATRICAL GROUP,
           Defendant.

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's, Buena Vista Theatrical Group d/b/a Disney Theatrical Group ("Defendant"), motion for summary judgment. For the reasons stated herein, Defendant's motion is granted.

I.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party must point to specific facts demonstrating a trial worthy issue. Id. The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental

1

Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370 (1st Cir. 1991).

## II. Background[1]

In early 2011, Defendant presented a production of the Lion King at the Providence Performing Arts Center ("PPAC"). It is Defendant's regular business to present live theater productions using labor provided to it by theaters such as PPAC. Defendant's presentation of the Lion King was governed by an agreement ("Agreement") with PPAC. PPAC provided "production labor" for the performance. The Agreement defined production labor as stagehands, wardrobe personnel, loaders, and musicians. The Agreement provided that PPAC was the employer of production labor. The Agreement noted, however, that PPAC was the "general employer" of production labor while Defendant was the "special employer" of production labor. Buchanan Affidavit at ¶ 4; Docket #13. Defendant was responsible for reimbursing PPAC for "all salaries related to . . . [p]roduction [l]abor" as well as "all required applicable, documented and actually paid FICA, unemployment insurance and workers' compensation insurance premiums . . . ." Buchanan Affidavit, Exhibit A at § 9.1; Docket #13-1 (emphasis added).

On February 20, 2011, Plaintiff, Kenneth Tracy ("Plaintiff"), was working as part of the production labor on the Lion King production. Defendant directed Plaintiff's work. Defendant had the right to "require that [PPAC] not engage or terminate" Plaintiff's employment if he "did not meet [Defendant's] standards, in [Defendant's] sole discretion . . . ." Buchanan Affidavit, Exhibit A at pg. 31 ¶ 14; Docket #13-1. Pursuant to the Agreement, Defendant paid PPAC for Plaintiff's services, including the premium for workers' compensation insurance. Plaintiff was injured when he was forced to jump into a set trailer to avoid being struck by it as it fell toward

---

[1]Plaintiff "does not dispute the material fact[s] presented" by Defendant. Plaintiff's Amended Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 1; Docket #18.

him.

On or about February 2, 2012, Plaintiff filed a complaint against PPAC in Rhode Island Worker's Compensation Court. Plaintiff received $68,394.92 in indemnity and $8,740.09 in medical workers' compensation benefits as a result of his injury. On or about February 13, 2014, Plaintiff instituted this action against Defendant in Rhode Island Superior Court. The action was subsequently removed to this Court. In the complaint, Plaintiff alleges that Defendant provided negligent direction to him and was negligent in failing to supply sufficient equipment and personnel.

Defendant contends that the Rhode Island Workers' Compensation Act bars Plaintiff's claim. Specifically, Defendant argues that, as the special employer, Defendant is immune from suit. Defendant also argues that double recovery is contrary to the intent of the Workers' Compensation Act.

Plaintiff argues that his claim is not barred by the Workers' Compensation Act. Plaintiff contends that he must have had actual or constructive knowledge that Defendant was his employer in order for Defendant to be immune from suit. Plaintiff argues that without this knowledge, he was unable to make a decision with regard to his right to opt out of workers' compensation coverage. Plaintiff also argues that double recovery is not an issue because PPAC voluntarily agreed to waive any third party lien.

### III. Analysis

R.I. Gen. Laws § 28-29-20 provides, in part, that an individual's right to compensation under the Workers' Compensation Act is "in lieu of all rights and remedies as to that injury . . . either at common law or otherwise against an employer. . . ." R.I. Gen. Laws § 28-29-20. "The

practical effect of this provision is that an employer is immune from suit when an injured employee is entitled to recovery under the Workers' Compensation Act." Urena v. Theta Products, Inc., 899 A.2d 449, 452 (R.I. 2006). An injured employee who has received workers' compensation benefits may, however, seek further recovery from an entity that has not been granted immunity under § 28-29-20. Id.

The Agreement identified PPAC as Plaintiff's general employer and Defendant as Plaintiff's special employer. According to the Workers' Compensation Act, the term "'[g]eneral employer' includes but is not limited to temporary help companies and employee leasing companies and means a person who for consideration and as the regular course of its business supplies an employee . . . to another person." R.I. Gen. Laws § 28-29-2(6)(i). A "'special employer' means a person who contracts for services with a general employer for the use of an employee . . . ." Id. at (ii). Special employers enjoy immunity from suit. Sorenson v. Colibri Corp., 650 A.2d 125, 132 (R.I. 1994) ("a special employer is an employer under the [Workers' Compensation Act] and thus is an entity granted immunity from suit by § 28-29-20"); see also Urena, 899 A.2d 449.

The statutory scheme also provides that

> [w]henever there is a general employer and special employer wherein the general employer supplies to the special employer an employee and the general employer pays or is obligated to pay the wages or salaries of the supplied employee, then, notwithstanding the fact that direction and control is in the special employer and not the general employer, the general employer, if it is subject to the provisions of the Workers' Compensation Act . . . shall be deemed to be the employer as set forth in subdivision (5) of this section and <u>both the general and special employer shall be the employer for purposes of §[] 28-29-17.</u> . . .

R.I. Gen. Laws. § 28-29-2(6) (iii) (emphasis added). Section 28-29-17 governs an employee's

waiver of common law rights under the Workers' Compensation Act.[2]

Plaintiff does not dispute that PPAC was his employer. Plaintiff, however, contends that Defendant was not his special employer because he did not have actual or constructive knowledge of any employment relationship with Defendant and did not give his consent to such an arrangement. Plaintiff argues that both Sorenson and Urena do not apply to this matter because those cases involve situations in which an employee is placed with a special employer through a temporary employment agency. In essence, Plaintiff contends that because PPAC is not a temporary employment agency, Defendant cannot be considered his special employer, thus Defendant is not immune from suit.

Plaintiff's argument is contrary to the statutory scheme and relevant case law. First, as noted above, a "special employer" is an entity that "contracts for services with a general employer for the use of an employee. . . ." R.I. Gen. Laws § 28-29-2(6)(ii). A "'general employer' <u>includes but is not limited to</u> temporary help companies and employee leasing companies and means a person who for consideration and as the regular course of its business supplies an employee . . . to another person." Id. at (ii) (emphasis added). Thus, in order to establish the general-special employer relationship according to the statutory scheme, a special employer must contract for services with a general employer for the use of an employee. Id. Contrary to Plaintiff's argument, a general employer "includes but <u>is not limited to</u>" temporary employment agencies. Id. (emphasis added).

Second, section 28-29-2(6) does not contain any language that requires that Plaintiff have

---

[2]Pursuant to § 28-29-17, an employee waives his right of action at common law for personal injuries if the employee has not given the employer written notice of his intent to reserve his rights. Lopes v. G.T.E. Products Corp., 560 A.2d 949 (R.I. 1989); see also R.I. Gen. Laws § 28-29-17. Notice must be given at the time of hiring. Id.

5

actual or constructive knowledge of the special employer. The "plain language of § 28-29-2 says that one's status as a special employer arises by virtue of a 'contract' with the general employer for the 'use of an employee.'" Urena, 899 A.2d at 453 (quoting R.I. Gen. Laws § 28-29-2(6)(ii)). In this case, the Agreement was for the use of an employee "thus bringing [Defendant] within the statutory definition of 'special employer.'" Urena, 899 A.2d at 454. Furthermore, not only did Defendant and PPAC contract for the use of an employee, they also expressly agreed that the arrangement constituted a special employer/special employee relationship for purposes of the Workers' Compensation Act. In Sorenson and Urena the Rhode Island Supreme Court underscored its "concern that allowing a party to bring suit against an employer [whether general or special] when he is covered by workers' compensation is contrary to legislative intent." Urena, 899 A.2d at 453. That rationale applies equally to this case.

Plaintiff, relying on Gaspar v. Callan Construction Co., 67 R.I. 363, 23 A.2d 759 (1942) and Anderson v. Polleys, 53 R.I. 182, 165 A. 436 (1933), contends that a contract of employment cannot be transferred by one employer to another without the knowledge and consent of the employee. Gaspar and Anderson, however, are readily distinguishable. The provisions of the Workers' Compensation Act defining the terms "general employer" and "special employer" were adopted well after Gaspar and Anderson were decided. See 1960 R.I. Pub. Laws ch. 182 § 1. Furthermore, PPAC did not transfer Plaintiff's employment – PPAC remained Plaintiff's employer pursuant to the Agreement and the Workers' Compensation Act. See generally R.I. Gen. Laws § 28-29-2(6)(iii). Thus, neither Gaspar or Anderson supports Plaintiff's position.

6

## IV. Conclusion

For the reasons stated herein, Defendant's motion for summary judgment is granted.


SO ORDERED

/s/ Mary M. Lisi
Mary M. Lisi
United States District Judge
February 4 , 2015

7